Filed 6/11/24  P. v. Ashley CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B328929 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA159597) |
| v. | |
| JAMES LELAND ASHLEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Maria A. Davalos, Judge.  Conditionally reversed and remanded with directions.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

# INTRODUCTION

James Leland Ashley appeals from the judgment entered after he pleaded no contest to recklessly causing a fire to an inhabited structure (Pen. Code,[1] § 452, subd. (b)).  He argues the trial court erred in denying his application for mental health diversion under section 1001.36 because the evidence failed to support its finding that Ashley did not currently suffer from a mental disorder.  The People concede that the trial court did not apply the proper legal standard under the recent amendments to section 1001.36, and that the matter should be remanded for the court to apply the amended statute.  We agree and, therefore, conditionally reverse the judgment and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Underlying charges

Ashley was charged with one count of arson of a structure (§ 451, subd. (c)), and one count of recklessly causing a fire to an inhabited structure (§ 452, subd. (b)).  According to the preliminary hearing testimony, on November 17, 2022, the police responded to a fire at a residence occupied by Ashley.  When the officers arrived, the house was on fire, and Ashley was in the backyard.  He was pointing a knife at his neck and attempting to cut himself.  After the police tased Ashley multiple times, he released the knife and was taken into custody.  Ashley told the officers that he started the fire because he was trying to kill himself.

---

[1]     Unless otherwise stated, all further statutory references are to the Penal Code.

## II.    Denial of mental health diversion

On February 16, 2023, Ashley filed an application for mental health diversion under section 1001.36.  He supported his application with a psychological assessment report from Haig Kojian, Ph.D.  According to the report, Ashley began using methamphetamine and fentanyl after he became involved in a relationship with an older man.  After losing his job and his car due to his drug use, Ashley became severely depressed and suicidal.

In the report, Dr. Kojian stated that Ashley "did qualify for the following DSM-5 diagnoses at the time of the alleged matter": Substance Induced Psychotic Disorder, Stimulant Use Disorder— Amphetamine Type, and Unspecified Depressive Disorder.  He further stated that Ashley's methamphetamine use resulted in a psychotic episode that substantially contributed to his behavior in the matter.  Dr. Kojian found that Ashley could benefit from mental health treatment and recommended that he be placed in an inpatient dual-diagnosis treatment program.  Dr. Kojian also found that Ashley would not pose an unreasonable risk of danger if he actively participated in the inpatient program, had a well-established after-care program, and addressed his future plans in individual therapy.  Based on these findings, Dr. Kojian opined that Ashley qualified for mental health diversion under section 1001.36.

On February 22, 2023, the trial court held a hearing on Ashley's application.  The court noted that, in the psychological assessment report, Dr. Kojian wrote that Ashley " 'did qualify for the following DSM[-]5 diagnos[e]s at the time of the alleged offense.' "  However, the court explained that it construed section 1001.36 as requiring that the defendant currently suffer

3

from a mental disorder.  The court stated:  "The impression that I'm getting from this report is that this doctor believes that at the time of the incident on that day he suffered—he did suffer from these disorders."  The court added that, if Dr. Kojian believed Ashley continued to suffer from a mental disorder, he "should say 'he suffers.'  He shouldn't say 'he did suffer.' "

Defense counsel argued that the totality of the report, including Dr. Kojian's recommendation for a specific treatment plan, showed that he believed Ashley's mental disorder was an "ongoing issue" rather than an isolated incident.  The court responded:  "I understand what you're saying, but the code is very clear that the court, in order to grant diversion, has to have a report that says the defendant suffers from a mental disorder that's in the DSM[-]5.  I don't have that.  I have a report that says he did.  In other words that he doesn't any longer.  That's the way I'm reading it."  The court stated that it was denying Ashley's application on that basis alone because "he has not made a prime facie case . . . that he currently suffers from a mental disorder."  The court also noted that it "didn't even get to the issue of whether [Ashley] poses a risk because his report is lacking for this court."

### III.  Plea and sentence

Following the denial of his application, Ashley agreed to plead no contest to one count of recklessly causing a fire to an inhabited structure.  The trial court accepted the plea, and placed Ashley on formal probation on the condition that he complete a mental health treatment program at the Tarzana Treatment Center.

On February 22, 2023, Ashley filed a timely appeal.  The trial court granted Ashley's request for a certificate of probable

4

cause to appeal the denial of his application for mental health diversion.

## DISCUSSION

On appeal, Ashley argues the trial court erred in denying his application for mental health diversion because there was no substantial evidence to support its finding that Ashley did not currently suffer from a mental disorder. The People assert that we need not reach the sufficiency of the evidence issue. Instead, the People concede the court erred because the amended version of section 1001.36, which was in effect at the time of Ashley's application, removed the requirement that a defendant currently suffer from a mental disorder. We agree with the People that the trial court misapplied section 1001.36 in denying mental health diversion, and that the proper remedy is to remand for the court to reconsider the application under the amended statute.

## I. Governing law

In 2018, the Legislature enacted section 1001.36 to create a pretrial diversion program for criminal defendants with certain diagnosed mental health disorders. (*People v. Frahs* (2020) 9 Cal.5th 618, 624; § 1001.36, subds. (a), (b)(1).) Pretrial diversion "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890.) In enacting the statute, "[t]he Legislature intended the mental health diversion program to apply as broadly as possible." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149.)

As originally enacted, section 1001.36 authorized a trial court to grant pretrial diversion if the defendant met the following six criteria: "(1) the defendant suffers from a qualifying

mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community." (*People v. Frahs*, *supra*, 9 Cal.5th at pp. 626–627, citing former § 1001.36, subd. (b)(1)–(6).)

However, " '[i]n successive versions of section 1001.36, the Legislature has provided increasingly detailed guidance for deciding whether a defendant qualifies for diversion.' " (*People v. Brown* (2024) 101 Cal.App.5th 113, 120.)  Effective January 1, 2023, Senate Bill No. 1223 (2021–2022 Reg. Sess.) further amended section 1001.36 to redefine the first two criteria as eligibility requirements and the remaining four criteria as suitability factors.  (§ 1001.36, subds. (a)–(c); Stats. 2022, ch. 735, § 1.)  " 'The criteria for each are specified in the statute.' " (*People v. Brown*, at p. 120.)

As amended, section 1001.36 now states the defendant is eligible for pretrial diversion if (1) "[t]he defendant has been diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders," and (2) "[t]he defendant's mental disorder was a significant factor in the commission of the charged offense." (*Id.*, subd. (b)(1)–(2).)  As to the first requirement, "[e]vidence of the defendant's mental disorder shall be provided by the defense and shall include a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert." (*Id.*, subd. (b)(1).)  As to the second requirement, the

6

amended statute creates a presumption that the defendant's mental disorder was a significant factor in the commission of the charged offense, "unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor." (*Id.*, subd. (b)(2).)

If the defendant satisfies the eligibility requirements, "the court must consider whether the defendant is suitable for pretrial diversion." (§ 1001.36, subd. (c).) The amended statute provides the defendant is suitable for diversion if: "(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder . . . would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] (4) The defendant will not pose an unreasonable risk of danger to public safety." (*Id.*, subd. (c)(1)–(4).)

Even where the defendant meets all of the eligibility and suitability criteria, the court retains the discretion to deny mental health diversion, but " 'this "residual" discretion must be exercised " 'consistent with the principles and purpose of the governing law.' " ' " (*People v. Brown, supra*, 101 Cal.App.5th at p. 121.) We review the trial court's denial of a request for mental health diversion for abuse of discretion. (*People v. Doron* (2023) 95 Cal.App.5th 1, 9; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080.) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v. Gerson*, at p. 1080.)

## II. Remand is required for the trial court to correctly apply the law under amended section 1001.36

In this case, the 2023 amendments to section 1001.36 were in effect when the trial court heard Ashley's application for mental health diversion. While the prior version of the statute required that the court be "satisfied that the defendant suffers from a mental disorder" (former § 1001.36, subd. (b)(1)(A)), the 2023 amendments changed that eligibility criteria. The amended statute instead requires that the defendant "has been diagnosed with a mental disorder . . . within the last five years by a qualified mental health expert." (§ 1001.36, subd. (b)(1).)

Thus, as the People concede, the trial court applied the incorrect legal standard when it denied mental health diversion based solely on its finding that Ashley did not currently suffer from a mental disorder. In deciding whether Ashley was eligible for diversion, the court instead should have considered whether Ashley received "a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert." (§ 1001.36, subd. (b)(1).) We also agree with the People that the proper remedy is to remand the matter with directions that the trial court reconsider Ashley's application under the correct legal standard in amended section 1001.36. (See *People v. Brown, supra*, 101 Cal.App.5th at p. 128; *People v. Doron, supra*, 95 Cal.App.5th at p. 9.) We express no view regarding whether Ashley is eligible or suitable for mental health diversion, or how the trial court should exercise its discretion on remand.

**DISPOSITION**

The judgment is conditionally reversed, and the matter is remanded to the trial court with directions to reconsider Ashley's application for mental health diversion under amended section 1001.36. If the trial court determines that Ashley qualifies for diversion, then it may grant the application. If the trial court determines that Ashley does not qualify for diversion, then it shall reinstate the judgment of conviction.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.

9